3-18-0-4-1-9 Deutsche Bank National Trust Company Appellant by Robert Reisinger v. Toribio Barrera-Abelish by Stephen Soprano Please proceed, Counsel. Good morning, Justice. Counsel? My name's Robert. I would like to inform the lawyers that we're blessed with our students here. Would one of the students say what school you're from? And, uh, what, uh, you're, you're in the, they're in the... Justice Banford County. I'm, uh, with the 12th Judicial Circuit. They're for, they're part of our, uh, intern program. So, from different schools. And there are 12 of them, uh, here today, or 13 yesterday. Okay, great. And, uh, they got the pamphlet from our court? Yes. Great. I was not even on the panel as a parent. Uh, one of them is my daughter. She's in law school. Oh, okay. And what schools are they? Many schools. John Marshall. Wait, all of you are from John Marshall? No. University of Iowa. Okay. Chicago Penn. John Marshall. And the rest, John Marshall? John Marshall. And Unison, and, uh, yeah. Southern, uh, Southern. Oh, good. Where? Right here. Oh, good. Uh, we got a, uh, Michigan guy out there. Uh, and a few others. Yeah, I had a chance to tell you about some of the history, like right here in this room. Uh, I, earlier when I, when I had a chance to, uh, talk with you. But it's really nice to have people visit this historic location and then get a chance to hear, uh, hear the arguments. And I'm sure the lawyers weren't aware this was going to happen, so you're on, so in a way you're on the spot. You know, it's funny, they don't care when we're here, but I mean, you know. Last time I did one of these, the, uh, the same thing happened. We had interns down at the First District, so. So what school did you go to? Used to be, uh. I'm sorry, yeah? What school did you go to? I went to, uh, Michigan State University College of Law. Yeah. Council? Uh, Bill Perezo and John Marshall. Oh, okay. Very good. And a message of us. Yeah, Marshall. Well, you've got, you've got a crowd back there. Yeah. As long as all this time is being shared with my phone, I'm all good. Yeah. Well, it's always great to have, like, in this historic room. Yeah. Especially in this historic building, uh, both arguments and, uh, you know, I'm sure the lawyers feel the same way I feel when you enter this courtroom and you, you think of how many, uh, lawyers and some great lawyers who've argued right here in this spot. As I told, uh, the class, uh, the Supreme Court sat here until the 1890s, until they had three locations. And, and that first under 1870, they did. And the appellate court wasn't created until the 1870 constitution and organized in mid-1870s. So for a while, both the Supreme Court and the appellate court sat here. So this is a, quite an historic location. So council, sorry about the interruption. Oh, no problem, Judge. Thank you. You didn't start his time, Bill. I, uh, I hope to be brief and not use all my time, but, uh, if needed, uh, I'll, uh, do my best. Uh, good morning again, justices, uh, council. My name is Robert Deisinger. I'm here on behalf of the appellant Deutsche Bank National Trust Company. Uh, this is a residential mortgage foreclosure case, probably not too unlike many you've heard before. Uh, the plaintiff in this case filed a foreclosure complaint in the circuit court of Will County, alleging that the borrower, Mr. Barrera, had failed to make the payments that were due. The defendant filed an affirmative defense and counterclaim, uh, asserting that he had cured the default prior to the complaint being filed. Uh, on cross motions for summary judgment, the trial court granted judgment for the defendant on his affirmative defense and counterclaim and denied judgment to the plaintiff. Uh, it's our position that the trial court erred in granting summary judgment to the As I put it in my brief, uh, I framed it that the critical question is, when did the plaintiff's loan servicer, specialized loan servicing, or SLS, receive the money that Mr. Barrera, uh, tendered to Western Union? You know, can I ask, uh, a simple question is, uh, what was the foreclosure complaint trial, August 8th or November 13th? November the 13th, I believe, is correct. Uh, I assume or presume that that question is being asked because there was a letter in the record attached to Mr. Barrera's, uh, plea. Uh, it was, I believe, Exhibit BB, uh, in which, uh, it was a response to a notice of error submitted, uh, by Mr. Supporta during the pendency of the case. And in that letter, uh, SLS laid out its, uh, its factual position that, uh, Mr. Barrera had contacted SLS on August 6th and asked how much was due, and they told him the amount, and that it was correct as of the date that he called. But by the time the money had been received, the foreclosure proceeding had started. And while, as lawyers, we think a foreclosure proceeding starts when a case is filed. But as a mortgage servicer, that's not how it works because a mortgage company can't bring a suit on its own. It has, because it's a non-corporeal entity, a business entity, it has to hire counsel. It has to refer it out. And that's what happened in this case. After, uh, Mr. Barrera, uh, let me back up one second. Uh, Mr. Barrera had been sent a notice of intent to foreclose. Uh, and that letter expired on August 4th, 2014. And, uh, so at the time he contacted SLS on August 6th, the letter had already expired. And then on August 8th, after the expiration of the letter, SLS then had referred the, the case to our, to my office, to, uh, Ensemble Lindbergh & Associates, and to begin the process of the foreclosure. And at that time, SLS had already begun to incur additional fees and costs. Because just having us evaluate the file, uh, necessarily incurred attorney's fees. Now, Western Union was an acceptable way to pay, was it not? Yes, but I don't believe that is, um, a relevant question. It's not a material fact that could have been, uh, the basis of the trial court's judgment. Because, uh, there were multiple acceptable ways, uh, for a tender. It was one of them. It is, it is. And so the trial court didn't necessarily err by saying Western Union was an acceptable way for Mr. Barrera to send the money. But that's not the real question. The question isn't how did he send the money, it's when did it get there. Well, the claim made by, uh, your opponent and found by the trial court was that, uh, the party did everything that the bank required, that SEL, SLS required, uh, to make this payment. Well... They, they followed what was acceptable. It's true. I mean, to the extent that, um, SLS's letter says we take payments by Western Union. Right. It's not, it's not a question that the money eventually got there by, from Western Union. But when the money got there is, is the issue. In his affirmative defense, Mr. Barrera pleaded, uh, I believe it was paragraph six of his amended affirmative defense, that on the same day he sent the money, that's when, um, SLS got it. But he didn't submit any evidence to support that conclusion. It's the, it's akin to the mailbox rule. Normally when you, uh, put something in the mail, receipt is presumed. That rule doesn't apply in this case. Right. It doesn't apply in this case because it's been superseded by federal regulation. The federal regulation says you don't have to credit the payment until it's actually received. And that's what SLS's letter explained to Mr. Barrera, that the money wasn't actually received on August 6th. It was partially received on August 8th and the balance on August 14th. Um, in the context of our summary judgment proceedings, um, the plaintiff had moved for summary judgment on its claim. Uh, the plaintiff filed the requisite Rule 113 Supreme Court foreclosure affidavit, attesting that Mr. Barrera was in default, uh, establishing the amounts currently due in Owing. And, um, in response, Mr. Barrera's brief did not have, uh, an affidavit to rebut that. And at that time, um, we filed a reply brief pointing this deficiency out. And subsequently, Mr. Barrera filed a certification affidavit that said that, uh, I believe everything that I said in my, um, pleading was true. And that's a paraphrase. It's not an exact quote. Um, but it was a pleading verification. It was a late verification. And so... I believe that the fact is in dispute about the timing of the receipt of the money. That's, that's the fact in dispute. And maybe the only fact in dispute. Well, I think both of us think it's pretty clear what happened and we just see things differently. This is a discussion here, right? In terms of the, um, the appropriateness of the certification of the, um... Right. Under Supreme Court Rule 191, if he's going to, uh, purport to attest to the truth of every allegation of his affirmative defense, he has to have personal knowledge of the timing of the receipt. And at no point has he ever established the timing of the receipt or how he would possibly know it. And during argument, um, it was conceded that Mr. Barrera doesn't know the timing of the receipt. And... The receipt of the Western, when the money got from Western Union to Specialized Loan Servicing. Right. He didn't hand it directly to Specialized Loan Servicing. So, um, that's the fact. That's the critical fact that he bears the burden of proof. And this was on cross motions for summary judgment. So he, not only is it his affirmative defense, which he has the burden to plead and to prove, it's a motion for summary judgment on which he has a burden to plead and prove. And to prevail, he has to establish by admissible evidence that there's no genuine initial material fact as to those claims in his pleading. He simply, and it's the plaintiff's position, that he simply didn't do that. The trial court denied my motion to strike his certification affidavit under Rule No. 191. We believe that was error. That it was simply erroneous, given the impossibility of Mr. Barrera's personal knowledge, which was eventually conceded. And on the November 13th claim, you don't feel it's of critical importance? No, I don't. Why was it error for him to chop or to refuse to strike that? Well, it's clear under Supreme Court Rule 191 that to have an admissible affidavit in support of summary judgment, the affiant has to have personal knowledge of the facts to which he attests. And he simply doesn't have the knowledge. What's lacking in the certification? Well, he's making a conclusion. He's saying, I know, and it's not disputed that he knows, that he gave the money to the currency exchange. But he's drawing the presumption from that of the timing of the receipt. And there's no evidence in the record that how he could possibly know when the money was received. There's none. And, in fact, it was stated not once but twice during oral argument at the summary judgment at the trial level that they don't know when the money got there. In fact, the trial court- You're very kindly saying that he was instructed that you would receive, accept receipt of these funds via Western Union, correct? Well, the way it was pleaded was that the agent at SLS told him the amount due as of August 6th. Okay. And the letter that he had previously received said that we accept payments by Western Union. We accept payments- Right. By Western Union. Right. And so facts are that on August 6th, with that statement of what's due and owing on August 6th- Yes. He complied with that. Actually rounded the dot a little bit for you, didn't he? Well, but he didn't. Because the question, again, is when the money got there. He can say, yeah, I sent the money on August 6th. But the timing of the receipt is what matters under the federal regulation. What do you mean he sent the money? He gave it to Western Union. He tendered it by Western Union, which then sent the money. You said it was received. It was received by Western Union. It wasn't received by SLS. That's what I'm saying. That's your fine point you're making. Yes. Yes, it was received by Western Union, but not by SLS. Your company sent a letter to him acknowledging that they received the money on August 8th and August 12th, right? I believe it was August 8th and August 14th. Okay. And that was acknowledged? Yes. So what is wrong with the certification language that you're saying was error from the trial judge to accept that language as affidavit? Well, the way it was written was that, and again, I don't have it in front of me. I could pull it out of the binder. But that I've reviewed the allegations of my pleading, and I believe them all to be true and correct. And that was all. It said. It didn't have any additional factual information. And under Rule 191, as interpreted by a case which escapes me at the moment, a Rule 191 affidavit has to be more expansive than a simple pleading verification. You can't simply verify your pleading and say, now I'm entitled to summary judgment. It requires more. And it requires you to establish not just this is what I believe to be true. It requires you to establish the facts that demonstrate your personal knowledge. This is kind of the inverse of a case. Is this fall over substance? I don't believe so, Judge. No. This is kind of an inverse of a case out of the First District called the City Mortgage v. Mikowski. In that case, it's a case about the tender of a demand letter. A notice of intent to accelerate the case and start a foreclosure. And in the Mikowski case, the borrower pleaded that they didn't receive the letter. And therefore, the plaintiff must not have sent it. And the appellate court in the First District, and I know you're not bound by First District, but it's persuasive authority. The First District said, well, that doesn't get you where you need to go. You need to establish that they didn't send it. Not that you didn't get it, but that you didn't send it. And this is like that. In this case, he's saying, well, I sent it. But he's not establishing when it was actually received. You're on that letter, and you've already argued that this doesn't really mean anything. But the letter said that foreclosure proceedings had already been initiated. But as you indicated, it wasn't until a later date. Yes. When actually it was filed in Scarborough. Yes. But your claim is that it's not when it started. My claim is that proceedings in the letter is a layman term, not a legal term. That foreclosure proceedings, that the process of initiating a foreclosure, had been started by the loan servicer after Barrera had sent the money, but before. In the letter, it says that the payments were late because foreclosure proceedings had already been initiated. I believe it says something close to that, yes. But we know now that that was true as far as the filing. Right. It wasn't intended to say we had already filed the foreclosure case. That's not what it means. It's not what it means. It means that we started the process of bringing a foreclosure case against you. So the guy sent the money, the bank got the money, and then afterwards they filed that complaint. Well, the bank doesn't have the money. The money was... No, I mean when they filed the complaint, did you have the money? No. No. You didn't have the money by then? No. The money had been returned. Oh, that's right. You had received the money, but then sent it back. Right. Two minutes, please. I just had a couple of minor things raised by the defendant's brief. One was that he had asked for remand for trial on damages on his counterclaim. I don't believe this court has jurisdiction to grant that kind of relief because no notice of cross-appeal was filed. The only appeal pending is the plaintiff's appeal. Second, there was an issue related to the jurisdiction of the trial court based on Deutsche Bank's denial that it did business in Rockdale, Illinois. I think that counsel pointed out it was actually said Joliet, but either Joliet or Rockdale, the case law is clear that you don't need to do business in it's not doing business to bring a foreclosure case where the property is located. Certainly the court had subject matter jurisdiction. It hears foreclosure cases all the time. It had personal jurisdiction over the parties, plaintiff submitted jurisdiction, and the defendant was served and eventually participated. So I don't believe there's any jurisdictional defect in the trial court. If you don't have any further questions. Thank you, counsel. Thank you. Counsel, you may proceed. Good morning, Your Honors. Counsel, and may it please the court. Do you accept the November 13th date? That's when the foreclosure case is filed. You know, we spent an awful lot of time. Your name? Stephan Supporta, on behalf of Chiribio Barrera, who's the homeowner. In this case, he was the defendant and counter plaintiff below and the appellee herein. We've spent an awful lot of time on counsel's argument concerning a letter that was never entered in evidence in this case. And that was the August 4th, 2016, response to our request for information. Now, it was in that letter that SLS said we began foreclosure proceedings on August 4th, 2014, and then immediately said foreclosure proceedings were started on August 8th, 2014. It's internally inconsistent. This is the letter where they claim to have received the broken-up payments on certain dates. However. That was the August 8th, August. Was that the 12th or 13th? No, it was the 12th. It was 5,000 on August 8th, 1660 on August 12th. Here's the problem.  And what this court couldn't tell by either the submitted brief or his argument, that on August 6th, 2014, at 3.09 p.m., Mr. Barrera, at the specific direction of Deutsche Bank through its loan servicer at the time, Specialized Loan Services, and I'll refer to them as SLS, tendered the sum of $6,700 to Western Union, which was SLS's duly authorized payment agent, via its quick-collect payment processing system in order to cover his arrearage of $6,658.45 and reinstate his mortgage loan. Of that amount, $6,660 was designated as his quick-collect payment. Now, the receipt that sets that forth is attached as an exhibit to Barrera's certification submitted in support of his motion for summary judgment. It appears in the record at C, the common law record, at page 835. Counsel never mentions this. Barrera made a lump sum payment, and he was told that they couldn't accept it. He got on the phone with a representative of SLS, and this is set forth in his affidavit, in his certification. An affidavit that Counsel for Deutsche Bank, Scott Chandler, begged the court to file a counter-affidavit. We had filed cross motions for summary judgment. I attached his certification to our reply brief. Mr. Chandler, no doubt, felt taken aback by that. And when we initially were before the court, I believe in January of 2018, the court wanted to know a general overview of the case. I don't think that the court had fully perused all the pleadings. At issue, we started to argue. Well, I'm going to ask this question. In summary judgment, do you need affidavits? No, you don't, but we submitted an affidavit that went uncontradicted. Did the opposing counsel submit an affidavit? No. So this case could have been decided without any affidavits? I'm not saying that. Well, on the basis of the pleadings, we had amended affirmative defenses and we had amended counterclaims. And we argue in our brief under Section 2-610 of the Code of Civil Procedure that Deutsche Bank in certain instances outright admitted and in other times claimed insufficient knowledge to admit or deny, which is not the language of Section 2-610, but rather it's a claim of insufficient knowledge to form a belief as to the truth or falsity of the allegation. That allegation of want of knowledge has to be supported by an affidavit, which it didn't do. So even on the basis of the pleadings, I think that there are certain admissions on file that weigh in our favor. Were your pleadings verified? No. No, but when an opponent answers and claims insufficient knowledge, whether the pleading is verified or not, they have to verify that statement of want of knowledge. It was something they didn't do. So there are a number of admissions of record. And counsel, again, in his initial brief, said there are no issues raised by the pleadings. Well, there are issues raised by the pleadings. So that's sort of a backup argument that we have. But I will say that at pages 790-91 of the record, Barrera's certification was not contradicted by way of an affidavit, but Deutsche Bank outright admitted the following. They admitted two things, that on August 6, 2014, defendant called SLS and was told by a representative named Renee that the amount needed to bring his loan current on August 6, 2014, was $6,658.45. So when they try to argue that this notice of default and intent to foreclose expired by its own terms, this was dated July 2, 2014. It was sent to Barrera by SLS. It said that as of 7-2-2014, the amount due was $4,978.04. And that they wanted payment by 8-4. Well, by 8-6, it blew up to $6,658.45. They admit that. And they admit that he was told on or before August 6 by a representative of SLS that that was the case. The other thing they admitted was that on or about August 14, 2014, Barrera called SLS to follow up, was put through to a representative named Maria, who told Barrera that SLS was going to return the $6,660.00 to Western Union. That's at page 792 of the record. That was paid in two amounts. Now these – I'm sorry? That was paid in two checks, two different checks. Ultimately, yeah. These are paragraphs 1 and 7 of Deutsche Bank's answer to Barrera's affirmative defense agreement statement. But let me go back. On August 6, 2014, Barrera made not one but two tenders of his reinstatement funds. The first tender was a lump sum payment. You didn't hear that from counsel. They don't set it forth in his brief. He was on the phone with SLS, and they told him, we can't accept anything more than $5,000. Sorry. Well, that completely contradicts what he was told over the phone. We'll go to Western Union. It's set forth in the letter of July 2nd. Tender the funds through their – that they'll process through their quick-collect processing system, and we'll get it. So he was on the telephone with them. It was rejected. He then broke up the payment into two payments. And at 3.46 p.m. on August 6, 2014, he tendered $5,000 as his quick-collect payment, and then including the fees and so forth. The receipt for that, Western Union quick-collect receipt, is in the record at C836, and that is an exhibit to his certification in support of the motion for summary judgment. He then also tendered $1,660 at 3.49 p.m. That's in the record at page 838. Now, the initial argument in January, the motion for summary judgment, Mr. Chandler, on behalf of Deutsche Bank, admitted the following. Quote, like I said, we admit that the two small payments were made, received, definitely made by Mr. Barrera on August 6th, that he sent them then, period. He goes on to say there's a question as to whether the lump sum payment ever got there. That's in the supplemental record at page 37, lines 4 through 9. All three of Barrera's Western Union quick-collect receipts are exhibits to his certification, as we said, and they're part of the record at 824 to 866. When Mr. Chandler realized he wasn't striking, Mr. Chandler implored Judge Carney for leave to file a counter-affidavit, because at that point in time, I don't know if he was relying on their response to our request for information or what the story was, but at that point in time, he said it's an issue whether this lump sum payment was ever received. Okay. Judge Carney granted him leave to file a counter-affidavit. Now, when he requested that relief, he admitted the legal sufficiency of our client's certification. So instead of filing a counter-affidavit, SLS didn't have the courage of their convictions to swear under penalty of perjury that the allegations set forth in their response to my request for information were accurate. Counsel instead brought a 191 motion to strike Barrera's affidavit. You could look at his certification. It's in the court record and in painstaking detail. He described step after step after step. Each time he tendered money to Western Union at the direction of SLS, the phone call he made after that initial lump sum payment was rejected, so on and so forth. It's in there. Judge Carney properly denied their motion to strike the affidavit. The affidavit went unopposed, and summary judgment was properly entered in favor of my client against Deutsche Bank. I'd like to address the specific findings that Chancellor Carney made, which were wholly supported by the record and the evidence in the court. During the initial argument, January 12, 2014, I'm sorry, January 12, 2018, the judge is familiarizing himself with the record, and he talks about SLS's July 2, 2014 notice of default in intent to foreclose. And he says, quote, there's a direct link right there, because the third way for Barrera to tender his reinstatement funds was via Western Union Quick Collect. And each of the receipts that Barrera tendered to the court as exhibits to his certification in support of the motion for summary judgment, each of those three receipts indicated that funds were tendered and accepted by Western Union Direct Collect. And Judge Carney stated that the foregoing constituted, quote, so much evidence. This is set forth in our amended brief at pages 6 and 7, in the January 12, 2018 report of proceedings at page 30, 31. It's a supplemental record at pages 33 and 34. The other findings that Judge Carney made were fully supported by the record. They're set forth at pages 927 of the record, page 1009 of the record. On March 9th, when he denied Georgetown Bank's amended motion for summary judgment and granted summary judgment in favor of my client, he found Barrera did everything. Deutsche Bank serviced their SLS, directed him to do in order to reinstate the mortgage. Western Union was one of the means by which Barrera contended his reinstatement funds. Deutsche Bank presented the court with no sworn testimony as to when SLS received Barrera's reinstatement funds. The findings were proper and fully supported by the evidence of record. When he denied the motion to reconsider on June 13th, 2018, he found the reinstatement funds were tendered to SLS servicer for Deutsche Bank on August 6th, 2014, but not accepted. That's true. In the letter of August 4th, 2016, attachments in the exhibit to Barrera's amended counterclaim was not competent evidence. That's at page 1009 of the record. They were given leave of court to file a counter after they didn't do it. All of the allegations set forth in my client's certification are deemed true for the purposes of the motion for summary judgment. Summary judgment was fully supported by the record. And all this stuff about when they received it, none of it's sworn under oath. None of it is competent evidence. None of it was presented to Judge Carney. This court can affirm the circuit court on any grounds it deems appropriate. If this court thinks that it's an issue when they received it, I don't think it is. But if they do, I think this court should find as a matter of both fact and law that Western Union was the agent for SLS. There's at least apparent authority there. They set it forth in their letter. This is where you make your payment. And if he makes a payment to Western Union, it's deemed received when it's tendered. You know, on your cross-claim damages, there was no cross-appeal. There was no cross-appeal filed here. So you would acknowledge that that wasn't appealed? It wasn't appealed. We included in our brief a prayer for relief. In any event, I think that this is a case that never should have been brought. The appeal never should have been brought. And I would ask the court to find in our favor to uphold the ruling of the circuit court and remand the case back down to the circuit court so that we could file a supplemental petition for fees for having to defend the appeal. I'm not going to have a chance to get back up here. But if they are to claim in any way that, well, it's not supported by the record. I won't go into it. Thank you. Thank you, counsel. Thank you for your argument, counsel. Hello again, Justices. Briefly, I just wanted to speak about maybe misrepresentation, probably unintentional, about the record. What was admitted in the pleadings and what was under Section 610. And it kind of goes to the same Rule 191 factors that we talked about. So in plaintiff's response to defendant's affirmative defense, which is located in my appendix, appendix 135 and a couple pages after that, the plaintiff admitted some things, and affidavit attesting to the want of knowledge was not attached. So I understand that legally those things for which Deutsche Bank claimed a lack of information to admit or deny are admitted. But none of those things are things within SLS's knowledge, and they are within the defendant's knowledge. Whether Mr. Barrera handed the money to the clerk at the Western Union is something within his knowledge, but not within SLS's knowledge or Deutsche Bank's knowledge. But the things that are within Deutsche Bank's knowledge and SLS's knowledge, it denied. For instance, Mr. Support, I believe, stated that Mr. Barrera called up SLS and SLS said, oh, we can't take a lump sum payment. You have to break it up into two pieces. That's something that's specifically denied in the pleadings. It's at paragraph 3, response denied. Similarly, in paragraph 6, that on August 6, SLS received the payments totaling $66.60 from Barrera, which was more than sufficient to reinstate his mortgage loan and retain this sum for a period of at least 8 days without objection. That's explicitly denied. And these pleadings were not previously verified. So there's no requirement for Deutsche Bank or SLS to verify this response at the time it was filed. Now, as to the – Well, we did what we thought was proper. We had an affidavit on file. We filed our foreclosure affidavits. And those affidavits established that Mr. Barrera remained in default. So why did you ask the court to file a contract? Well, I can't get into Mr. Chandler's head, unfortunately. But under Rule 191, we had the opportunity and believed it to be procedurally proper to move to strike the affidavit. There's case authority cited in our brief that said that to challenge an affiant's want of knowledge for a 191 affidavit, you have to move to strike it or move to strike the brief. And that's what we did. It's akin to filing a 619 motion in the face of a pleading. You know, when somebody files a complaint, the allegations of the complaint are deemed admitted if you don't answer. But in lieu of answering, you're given the opportunity to file a motion to strike it. And at the conclusion of that motion, typically the judge will give you another chance to say, well, no, I don't think this is – I don't think that the complaint should be stricken. I'm going to allow it to stand. Would you like to file – you know, do you still want to file an affidavit? That didn't happen in this case. The judge just went straight to summary judgment. Just, nope, judgment for you, denied for you. And when we pointed out in our motion to reconsider that the trial court had erred because in denying the 191 motion, that motion was also overruled. The motion to reconsider was also overruled. It's clear that the affiant did not have the personal knowledge to attest to the things he claims to have sworn on in growth. His counsel admitted it twice. It's clear as a matter of logic that he doesn't know. He wasn't there at SLS when the money got there. He doesn't work for SLS. In fact, no party issued discovery because Judge Lund at the time had basically put this thing on a rocket docket. He was around with Western Union. I'm sorry, Judge? He was around with Western Union. I don't understand. He was able to – somebody attempted to pay him to go to Western Union. Right, right. And that's one of the things that's not – largely not being disputed, that Barrera actually gave money to Western Union. One minute. What about the status that was just raised as Western Union's status as SLS? Well, it was never pleaded and never briefed in the trial court. So, well, I take that back. It was raised in the summary judgment briefs. But as we wrote at the time, it was never pleaded. It's a question of fact whether or not Western Union is SLS's agent. And it's not one that there was any opportunity to previously contest it. But as I wrote in my brief – What was the pleading on that allegation that you could pay with Western Union? What was the pleading response to that? Oh, I don't think that was ever raised specifically in the pleading. So they talked about referring the funds, that the funds were there and then submitted to your client. I'm sorry, Justice, I'm not following. There was a pleading about funds were tendered and then tendered to your client. Right, right. It's not disputed that Western Union was one of the methods by which you could tender the payment. But akin to mailing it, the same letter said you could put it in the mail. Well, if you put a check in the mail, whose agent is the post office? It's not the recipient. It's the sender. And the same here. Barrera – But it's acknowledged that Western Union was a way – Was a method that was acceptable to tender payment, yes. Barrera paid Western Union to send the money. In fact, Barrera's receipts say that it was supposed to be sent second business day. Not instantaneous. Not here's SLS's money, SLS. It's, hey, Western Union, get the money to SLS in two business days. That's what the receipts say. There's not any evidence there that SLS is – or Western Union is SLS or Deutsche Bank's agent. So for all those reasons, and all those reasons previously said fortunate briefs, we believe the trial court erred when it granted summary judgment to the defendant. At worst, there's an issue of fact as to the timing of SLS's receipt of the payment. But we believe the facts are clear, that there's no genuine issue of material fact as to our claim, and that the defendant failed to submit admissible evidence in support of his claim. And for those reasons, we'd ask that the judgment of the trial court be reversed. Thank you, counsel. Thank you. Thank you both for your arguments.